UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-00081-GNS-HBB

CHRISTOPHER BOLING                 PLAINTIFF

V.

PROSPECT FUNDING HOLDINGS, LLC          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 16) and Plaintiff's Motion for Partial Summary Judgment (DN 20). The motions have been completely briefed and are now ripe for a decision. For the reasons outlined below, Defendant's Motion to Dismiss is **DENIED**, and Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

### I. STATEMENT OF FACTS AND CLAIMS

On May 23, 2008, Plaintiff Christopher Boling ("Boling") suffered severe burns to his right hand and a posterior dislocation of his right shoulder after vapors escaping from a gas can ignited upon coming into contact with a hot metal eye bolt. (Am. Compl. ¶¶ 9-11, DN 7). At the time of his injury, Plaintiff was married to Holly Boling, who is not a party to this action.[1] (Am Compl. ¶ 13).

---

[1] Under the terms of the Bolings' divorce property settlement agreement, Plaintiff's portion of any recovery for his personal injury claim against Blitz USA was to be considered his non-marital property. (Pl.'s Counter Mot. for Partial Summ. J. & Resp. to Def.'s Mot. to Dismiss, Ex. 5, DN 20-5). According to Boling, his ex-wife will not receive any funds from his personal injury settlement. (Mem. in Supp. of Pl.'s Counter Mot. for Partial Summ. J. & Resp. to Def.'s Mot. to Dismiss 11, DN 20-1).

As a result of his injuries, the Bolings filed suit against the gas can manufacturer, Blitz USA, in this Court.² During the course of their litigation against Blitz USA, the Bolings entered into a series of non-recourse loans to obtain advances on his potential personal injury recovery. These non-recourse loans were obtained from Prospect Funding Holdings, LLC ("Prospect") and Cambridge Management Group, LLC ("CMG").³ (Compl. Exs. A-D, DN 1-1 to 1-4). These loans are summarized as follows:

| Date | Lender | Amount of Loan & Fees |
|---|---|---|
| October 2009 | CMG | $10,000.00 plus fees of $1,275.00 plus additional costs |
| March 2010 | CMG | $5,000.00 plus fees of $825.00 plus additional costs |
| May 2012 | Prospect | $5,000.00 plus fees of $1,025.00 plus additional costs |
| April 2013 | Prospect | $10,000.00 plus fees of $1,800.00 plus additional costs |

(Compl. ¶¶ 14-31, Exs. A-D, DN 1 to 1-4). By their terms, these loans accrue interest at a rate of 4.9% per month; as of August 22, 2014, the total amount owed to Prospect was $340,405.00. (Compl. Exs. A-D, F, DN 1 to 1-4, DN 1-6).

On June 19, 2014, Boling filed this lawsuit against Prospect seeking a declaratory judgment that the loan agreements are to be interpreted by and deemed unenforceable under Kentucky law. (Compl. ¶¶ 43, 45). Subsequently, on September 4, 2014, Prospect filed suit

---

² *Boling v. Blitz USA, Inc.*, Civil Action No. 1:09-CV-00067-JHM-ERG. As alleged in the Amended Complaint, Boling has settled his claim with Blitz USA, but the proceeds of the settlement are tied up in bankruptcy. (Am. Compl. ¶ 38).
³ As alleged in the Complaint, Prospect acquired the loan agreements between Boling and CMG in 2013. (Compl. ¶ 32).

against the Bolings in the Superior Court of New Jersey, Chancery Division, and October 3, 2014, Boling removed that action to the U.S. District Court for the District of New Jersey.[4]

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon diversity jurisdiction. *See* 28 U.S.C. § 1332.

## III. DISCUSSION

### A. Prospect's Motion to Dismiss[5]

In its motion, Prospect seeks dismissal of the Complaint on four separate bases, that: (i) the Court lacks personal jurisdiction over Prospect; (ii) Boling has failed to name his ex-wife who is a necessary party; (iii) the Court should abstain on the basis of the *Colorado River* doctrine; and (iv) the Court should dismiss or transfer on the basis of *forum non conveniens*. Each of these bases is addressed separately below.

#### 1. *Personal Jurisdiction*

When sitting in diversity, federal courts apply the law of the state where it sits in determining whether personal jurisdiction exists over a nonresident defendant. *See Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir. 1988)). In determining whether personal jurisdiction exists, the Court must consider: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with Due Process."

---

[4] On May 11, 2015, that court ordered the transfer of the New Jersey action to this Court on the basis of the first-to-file rule. After that court denied Prospect's motion to reconsider, the case was transferred to this Court and assigned Civil Action No. 1:15-CV-00112-GNS.

[5] As a preliminary matter, Prospect's motion does not comply with LR 7.1(a), which requires a separate supporting memorandum to be filed with every non-routine motion before this Court. In addition, while the caption of the motion requests an oral argument, Prospect has not filed a motion for oral argument as required by LR 7.1(f). The Court nevertheless concludes that oral argument is not necessary to address the issues raised in Prospect's motion.

3

*Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006) (citation omitted). At this stage of the litigation and because the Court is addressing this issue based upon written submissions only, Boling "need only make a prima facie showing of jurisdiction" to defeat Prospect's motion to dismiss. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

In *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), the Kentucky Supreme Court clarified the scope of Kentucky's long-arm statute, KRS 454.210, which had been construed broadly by Kentucky courts. In *Beach*, the court explained the proper analysis of the long-arm statute:

> First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.* at 57.

In this case, the cause of action falls under KRS 454.210(2)(a), which provides that courts "may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [t]ransacting any business in this Commonwealth . . . ." In entering into the loan agreements with Kentucky residents, Prospect and CMG obtained an interest in the Bolings' potential personal injury recovery in a lawsuit pending in a federal court in Kentucky. Because the issues in the present case directly relate to the enforceability of those loan agreements, the Court concludes that Prospect and CMG transacted business in Kentucky for the purpose of its long-arm statute. *See Beach*, 336 S.W.3d at 59 ("If there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction, then jurisdiction is properly exercised.").

Even if Prospect's actions fall under KRS 454.210, this Court must still determine whether the requirements of due process are met—"whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under Sixth Circuit precedent, this Court is to consider the following criteria in making that determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Considering the first criteria and taking all reasonable inferences in favor of Boling, the Court finds that Prospect purposefully availed itself of the privilege of transacting business in Kentucky. Prospect and CMG reached beyond their states of domicile and provided loans to Kentucky residents. These acts were more than just "random," "fortuitous," or "attenuated," but instead reflect deliberate and direct action by Prospect and CMG. *See Burger King Corp. v. Rudezewicz*, 471 U.S. 462, 475 (1985). As noted above, the loan agreements signed by Boling purported to assign an interest in the Kentucky litigation proceeds, the acceptance of which by Prospect and CMG is akin to owning property in the Commonwealth. Thus, Prospect and CMG should have reasonably anticipated that they would fall under a Kentucky court's jurisdiction. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (determining that the issuance of a single life insurance policy to a non-resident constituted purposeful availment). The second

factor is also satisfied. Boling's claims against Prospect directly relate to Prospect and CMG's contacts with Kentucky—the Bolings' loan agreements.

Finally, the Court finds that actions of Prospect and CMG had a substantial enough effect on Kentucky to make jurisdiction reasonable. For loans totaling $30,000 plus fees, Prospect seeks to recover more than $340,405 as of August 22, 2014, secured by the Bolings' claims pending in this forum for a personal injury occurring in Kentucky.

For these reasons, the Court concludes that it may exercise personal jurisdiction over Prospect relating to Prospect and CMG's loan agreements with the Bolings. The Court will deny the motion to dismiss on this basis.

### 2. *Necessary Party*

Prospect also argues that the Court should dismiss the Complaint because Boling has failed to include his ex-wife as a party in this action because she is a necessary party. Under Fed. R. Civ. P. 12(b)(7), the Court may "dismiss an action for failure to join a party in accordance with Rule 19." *Register v. Cameron & Barkley Co.*, 467 F. Supp. 2d 519, 530 (D.S.C. 2006) (citations omitted). In ruling on whether to grant a motion on this basis, the Court may consider "the allegations of the complaint and the affidavits and other proofs adduced in contradiction or support thereof." *Esters v. Shell Oil Co.*, 234 F.2d 847, 849 (5th Cir. 1956) (footnote omitted).

> In relevant part, Rule 19 provides:
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). As one court has explained:

> "One is not an indispensable party to a suit merely because he has a substantial interest in the subject matter of the litigation, nor is one an indispensable party even though one's interest in the subject matter of the litigation is such that his presence as a party to the suit is required for a complete adjudication in that suit of all questions related to the litigation."

*Ford v. Adkins*, 39 F. Supp. 472, 473-74 (D. Ill. 1941) (internal quotation marks omitted) (citation omitted). Similarly, the term "necessary party" means "'desirable parties' as distinguished from indispensable parties on the one hand and from proper parties on the other hand." *Bradley v. Sch. Bd. of City of Richmond*, 51 F.R.D. 139, 142 (E.D. Va. 1970) (internal quotation marks omitted) (citation omitted).

Boling's ex-wife is not an indispensable party. In this lawsuit, Boling seeks only to litigate his claims relating to the non-recourse loans. The absence of his ex-wife as a party does not preclude him from obtaining that relief; rather, it only means that Prospect may still be entitled to seek enforcement of its loan agreements against her. Accordingly, the Court denies the motion to dismiss pursuant to Rule 12(b)(7).

### 3. Colorado River *Doctrine*

Prospect seeks dismissal of the claims in this lawsuit based upon the abstention doctrine articulated by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Under that doctrine, "a district court may sometimes be justified in abstaining from exercising jurisdiction in deference to a parallel state-court proceeding. The Court noted, however that '[a]bstention from the exercise of federal jurisdiction is the exception,

7

not the rule.'" *Great Earth Cos. v. Simmons*, 288 F.3d 878, 886 (6th Cir. 2002) (quoting *Colo. River*, 424 U.S. at 813).

"A necessary requirement for application of this *Colorado River* doctrine, however, is the presence of a *parallel*, state proceeding." *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.3d 28, 31 (6th Cir. 1984). In this case, there is no parallel state proceeding because the New Jersey state court action was removed to federal court and subsequently transferred to this forum. *See Piekarski v. Home Owners Sav. Bank*, 743 F. Supp. 38, 42 (D.D.C. 1990) (holding that the *Colorado River* doctrine was inapplicable because the case was not pending in state court after it was removed to federal court). Accordingly, the doctrine is inapplicable and does not provide a basis for the dismissal of this action.

### 4. *Forum Non Conveniens*

Under the doctrine of *forum non conveniens*, courts are to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of the general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). As the Supreme Court has explained, "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient . . . ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

In addressing the issue of *forum non conveniens*, the Court applies a two-step analysis by considering: (i) whether the defendant has established that an appropriate alternative forum is available; and (ii) whether the balance of public and private interest factors demonstrates an unnecessary hardship on the defendant. *See Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 (6th Cir. 2010). In general, "a district court must apply a strong presumption in favor of a plaintiff's selected forum, particularly if the forum is the home of the plaintiff, because 'it is reasonable to assume that this choice is convenient.'" *Id.* at 523-24

(quoting *Piper Aircraft*, 454 U.S. at 255-56). If, however, those factors indicate that "oppression and vexation to a defendant [is] 'out of all proportion to plaintiff's convenience'", dismissal is warranted. *Id*. at 525 (citation omitted).

In this case, Boling elected to file this lawsuit in this forum, and his domicile is located within this district. While Prospect argues against this Court retaining jurisdiction, Prospect (and CMG) entered into the non-recourse loans with Kentucky residents which negates any argument of oppression or vexation in this case remaining in this forum.

The Court is also mindful of the first-to-file rule and its application to this case. The first-to-file rule provides that "when two lawsuits involving nearly identical parties and issues have been filed in two different federal district courts, the district court in which the first suit is filed should, as a general rule, proceed to judgment." *Plantronics, Inc. v. Clarity, LLC*, No. 1:02-CV-126, 2002 WL 32059746, at *2 (E.D. Tenn. July 17, 2002). As this Court has noted, the "[c]ourts in this circuit look to three elements to determine whether the first-to-file rule applies: '(1) the chronology of events; (2) the similarity of the parties involved; and (3) the similarity of the issues or claims at stake.'" *McGraw-Hill Global Educ., LLC v. Griffin*, No. 5:14-CV-00042-TBR, 2014 WL 5500505, at *6 (W.D. Ky. Oct. 30, 2014) (citation omitted).

Here, the Kentucky lawsuit was filed prior to the New Jersey lawsuit, and the U.S. District Court for the District of New Jersey has already refused to exercise jurisdiction over the parties' dispute in that forum based upon the first-to-file rule. Because the necessary parties and the circumstances leading up to this litigation are the same, the Court will retain jurisdiction over this matter based upon the first-to-file rule and deny Prospect's motion to dismiss.

### B. Boling's Motion for Partial Summary Judgment

Boling has moved for partial summary judgment. (Pl.'s Mot. for Partial Summ. J. 32). Through his motion, Boling seeks an order invalidating the forum selection and choice of law provisions in the loan agreements, and a ruling that Kentucky law governs this dispute.

In ruling on a summary judgment motion, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must the produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

10

1.   *Forum Selection*

As this Court has noted, "[g]enerally, when determining the enforceability of a forum selection clause, a court sitting in diversity applies federal law." *Champion Roofing XV, LLC v. KPC Enters., LLC*, No. 3:12-CV-142, 2012 WL 4471582, at *2 (W.D. Ky. Sept. 26, 2012) (citing *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 827-28 (6th Cir. 2009)). In doing so, "[the] federal court must give considerable weight to forum selection clauses. Although such clauses are not always dispositive, they should be upheld unless it is unfair to do so." *KFC Corp. v. Lilleoren*, 783 F. Supp. 1022, 1025 (W.D. Ky. 1992). In analyzing the enforceability of a forum-selection clause:

> [T]he Court must examine whether the forum selection clause in the [] [a]greement is fundamentally unfair or unreasonable. Such unfairness may exist where such clauses are a result of "fraud, undue influence, or overweening bargaining power or as noted by the American Law Institute in a passage to which both Kentucky and federal courts cite in support of their positions on this matter, where "for some reason the courts of the chosen state would be closed to the suit or would not handle it effectively or fairly . . . [or where] the chosen state would be so seriously an inconvenient forum that to require the plaintiff to bring suit there would be unjust."

*Powerscreen USA, LLC v. S&L Equip., Inc.*, No. 3:07-CV-699-H & 3:07-CV-700-H, 2008 WL 2949434, at *7 (W.D. Ky. July 30, 2008) (fourth alteration in original) (citations omitted). *See also Taylor v. Invest. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1060-61 (D. Minn. 2001) (declining to enforce a forum-selection clause where the enforcement would result in the possibility of conflicting judgments).

In present case, Boling was within his contractual rights to select this forum. In particular, the forum-selection clause in the first loan agreement allowed Boling to select the

11

forum to litigate his claims against Prospect,[6] specifically that agreement provides that any dispute shall be pursued in arbitration in New Jersey "or in a Court of competent jurisdiction, at the election of CMG or Plaintiff." (Compl. Ex. A).

Even if the Court were to disregard Boling's chosen forum, it would be unfair to force him to litigate his claims against Prospect in a different forum. The terms of the loan agreements reflecting a significant disparity between the parties. Each of the loans accrues interest at a rate of 4.9% per month, in addition to "fees" of between roughly 12.75% and 20% of the principal loan. On original loan balances totaling $30,000 plus fees, Prospect and CMG claim that the Boling owes more than 11 times the original balance—$340,405.00—as of August 22, 2014. Under the circumstances, public policy weighs in favor of this Court retaining jurisdiction to determine the validity of the loan agreements.

From a fairness standpoint, Kentucky's interest in this litigation is also substantial. Prospect's loan agreements relate to the outcome of a personal injury lawsuit being litigated in Kentucky arising from a personal injury that occurred in Kentucky. In addition, if this Court

---

[6] The first loan agreement dated October 23, 2009, contains a forum-selection clause stating that any dispute shall be pursued in arbitration in New Jersey "or in a Court of competent jurisdiction, at the election of CMG or Plaintiff." (Compl. Ex. A, DN 1-1). The second loan agreement dated March 23, 2010, contains a forum-selection clause stating that any dispute shall be pursued in arbitration in New Jersey "or in a Court of competent jurisdiction, at the election of CMG . . . ." (Compl. Ex. B, DN 1-2). The third loan agreement dated May 18, 2012, provides that "THE PARTIES IRREVOCABLY AGREE THAT ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE LITIGATED ONLY COURTS HAVING SITUS IN HENNEPIN COUNTY, MINNEAPOLIS, MINNESOTA." (Compl. Ex. C, DN 1-3). The last agreement dated April 17, 2013, that "THE PARTIES IRREVOCABLY AGREE THAT ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE LITIGATED ONLY IN COURTS HAVING SITUS IN NEW YORK COUNTY, NEW YORK." (Compl. Ex. D, DN 1-4).

were to enforce the forum selection clause, the Court would divest itself of the opportunity to address the enforceability of loan agreements of uncertain validity under Kentucky law.[7]

In light of the fact that there are potentially conflicting forum-selection clauses in the four loan agreements, it is necessary for the Court to address whether it will retain jurisdiction over the claims relating to all four agreements. As one court has noted, "[f]ederal courts construing conflicting forum selection clauses governing separate claims raised in a single action often decline to enforce both clauses out of concern for wasting judicial and party resources." *Jones v. Custom Truck & Equip., LLC*, No. 10-611, 2011 WL 250997, at * 4 (E.D. Va. Jan. 25, 2011). "[When] enforcing 'the forum selection clauses of all the agreements' would force the parties to litigate 'in multiple forums, the exact same claims,' the Court would enforce the forum selection clause in only one agreement." *Capsource Fin., Inc. v. Moore*, No. 11-2753, 2012 WL 2449935, at *4 (D. Minn. June 27, 2012) (quoting *Pressdough of Bismarck, LLC v. A & W Rests., Inc.*, 587 F. Supp. 2d 1079, 1086 (D.N.D. 2008)).

For these reasons, the Court will uphold Boling selection of this forum to litigate his claims against Prospect, and for purposes of judicial economy and to avoid inconsistent results,

---

[7] "As Kentucky's highest court has noted:

> At common law champerty is defined to be a bargain by the terms of which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense or to aid in so doing in consideration of receiving, in the event of success, some part of the land, property or money recovered or deriving some benefit therefrom.

*Fordson Coal Co. v. Garrard*, 125 S.W.2d 977, 981 (Ky. 1939) (citing *Wilhoit's Adm'x v. Richardson*, 236 S.W. 1025 (Ky. 1921)). The defense of champerty is still viable under Kentucky law. *See Scott v. Davis*, Nos. 2013-SC-000228-DG & 2013-SC-000682-DG, 2015 WL 3631136, at *6 (Ky. June 11, 2015) (discussing the assignability of legal malpractice claims and the defense of champerty).

the Court will retain jurisdiction over claims relating to all four loan agreements. The Court will grant partial summary judgment for Boling on this basis.

### 2. *Choice of Law*

Boling also seeks partial summary judgment on the issue of choice of law. Under the terms of the loan agreements, the state laws of New Jersey, Minnesota, and New York would apply, depending upon the specific agreement. (Compl. Exs. A-D, DN 1-1 to 1-4).

"Kentucky has adopted the "significant relationship" test, for determining what law applies to contract disputes. "Put simply, the courts should apply the law of the state with the most significant relationship to the contract." *Incline Energy, LLC v. Stice*, No. 3:09-CV-58-H, 2009 WL 1975038, at *1 (W.D. Ky. July 6, 2009) (citation omitted). In *Stice*, this Court concluded that a Kentucky state court would apply Kentucky law in determining whether the assignment of proceeds of a Kentucky cause of action could be enforced and whether such funding agreements violated Kentucky public policy when the litigation was pending in its courts and the litigation concerned Kentucky residents. *See id.*

The present case involves essentially identical circumstances as in *Stice*. Accordingly, this Court will apply Kentucky law in addressing any issues relating to the enforcement and/or enforceability of the loan agreements. The Court will grant partial summary judgment in Boling's favor on this basis.

## IV.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Prospect Funding Holdings LLC's Motion to Dismiss (DN 16) is **DENIED**; and

2.      Christopher Boling's Motion for Partial Summary Judgment (DN 20) is **GRANTED**.

**Greg N. Stivers, Judge**
**United States District Court**

September 24, 2015

cc:     counsel of record