UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-00081-GNS-HBB

CHRISTOPHER BOLING                                                                              PLAINTIFF

v.

PROSPECT FUNDING HOLDINGS, LLC                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Third Motion for Summary Judgment with Motion for Attorneys' Fees and Sanctions Pursuant to 28 U.S.C. § 1927 (DN 93) and Defendant's Second Cross-Motion for Summary Judgment (DN 96). For the reasons discussed below, both motions are **GRANTED IN PART** and **DENIED IN PART**.

### I.   STATEMENT OF FACTS AND CLAIMS

The pending motions center on Defendant Prospect Funding Holdings, LLC's ("Defendant") efforts to recoup monies it loaned to Plaintiff Christopher Boling ("Plaintiff"). (*See, e.g.*, Def.'s Mem. Law Opp'n Pl.'s Third Mot. Summ. J. Supp. Def's Second Cross-Mot. Summ. J. 1-7, DN 96 [hereinafter Def.'s Mem. Supp. Mot.]). The relevant facts are as follows:

Plaintiff filed a personal injury lawsuit and, he used the prospective recovery from that suit as collateral to obtain and secure loans from Cambridge Management Group, LLC ("CMG") and Defendant over a four-year period.[1] (Compl. Exs. A-D, DN 1-1 to 1-4). As this Court has previously noted, the transactions can be summarized as follows:

---

[1] Both CMB and Defendant are involved in the business of litigation funding—i.e., Defendant's "principal purpose . . . was/is to advance money to plaintiffs involved in personal injury and

1

| Date of Agreement | Lender | Amount of Loan & Fees |
|---|---|---|
| October 2009 | CMG | $10,000.00 plus fees of $1,075.00 plus additional costs |
| March 2010 | CMG | $5,000.00 plus fees of $525.00 plus additional costs |
| May 2012 | Prospect | $5,000.00 plus fees of $1,025.00 plus additional costs |
| April 2013 | Prospect | $10,000.00 plus fees of $1,800.00 plus additional costs |

(*See* Mem. Op. & Order 2, DN 31; Berlin Aff. ¶¶ 10, 15, 20-21).

The loan agreements governing the transactions provided that Plaintiff would not become obligated to pay off the loans until he obtained a favorable settlement in his personal injury action. (Compl. Exs. A-D, F, DN 1-1 to 1-4, 1-6). The agreements further stated that each loan accrued interest at a rate of 4.9% per month, and that any disputes arising from: (1) the first two agreements were to be governed by New Jersey law and resolved via arbitration; (2) the third agreement was to be litigated in courts located in Hennepin County, Minneapolis, Minnesota; and (3) the fourth agreement would be litigated in New York County, New York. (Compl. Exs. A-D, F).

After Plaintiff obtained a favorable settlement in his personal injury action, Defendant notified him that he owed $340,304.00, thereby prompting him to file a declaratory judgment action in this Court. (Compl. ¶¶ 43, 45, DN 1). Specifically, Plaintiff sought a judgment declaring that: (1) Kentucky law governed his action, and (2) the loan agreements were void pursuant to Kentucky's prohibition on champerty and usurious interest rates. (Compl. ¶¶ 1-40).

Defendant raised several counterclaims in response to the Complaint. In particular, it alleged that Plaintiff's failure to pay off the loans amounted to: a breach of contract, a breach of

---

related litigation." (Berlin Aff. ¶ 2, DN 96-3). Defendant acquired CMG's loans in 2013. (Def.'s Mem. Law Opp'n Pl.'s Third Mot. Summ. J. Supp. Def's Second Cross-Mot. Summ. J. Ex. E, DN 96-2).

the implied duty of good faith and fair dealing, negligent misrepresentation, and conversion.[2] (Def.'s Countercl. ¶¶ 44-48, 58-74). Defendant also asserted that, in the event the loan agreements were held unenforceable, it would be entitled to equitable relief—i.e., recoupment of the $30,000.00 it loaned to Plaintiff plus $4,625.00 in fees—pursuant to principles of unjust enrichment and promissory estoppel. (Def.'s Countercl. ¶¶ 49-57).

This Court ultimately issued two judgments in Plaintiff's favor. In the first, this Court held that Kentucky law governed the interpretation and enforcement of the loan agreements. (Mem. Op. & Order 10-14, DN 31). In the second, this Court found the loan agreements unenforceable due to Kentucky's prohibition on champerty and usurious interest rates, but nonetheless reasoned that Defendant could pursue its equitable claims in order to recoup the funds that it loaned to Plaintiff. (Mem. Op. & Order 4-13, 16, DN 83). This Court also held that Defendant could pursue its claims for breach of the implied duty of good faith and fair dealing, negligent misrepresentation, and conversion. (Mem. Op. & Order 4-13, 16, DN 83).

Not long after this Court entered its two judgments, Plaintiff and Defendant filed competing motions for summary judgment on Defendant's counterclaims. (*See* Pl.'s Mem. Supp. Third Mot. Summ. J. Mot. Att'ys' Fees & Sanctions, DN 93-1 [hereinafter Pl.'s Mem. Supp. Mot.]; Def.'s Mem. Supp. Mot.). Plaintiff argued in his motion that Defendant's counterclaims fail as a matter of law, and that Defendant's "gamesmanship" through the course of this litigation entitles him to sanctions and fees pursuant to 28 U.S.C. § 1927. (Pl.'s Mem. Supp. Mot. 4-16). Defendant asserted that it is entitled to judgment as a matter of law on each of its counterclaims, and that Plaintiff's motion for sanctions is meritless. (Def.'s Mem. Supp. Mot. 1-23). The motions are ripe for adjudication.

---

[2] In its prayer for relief, Defendant listed $400,000.00 plus attorneys' fees and interest as the appropriate remedy for these claims. (Def.'s Countercl. ¶ 22, DN 44).

3

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon diversity jurisdiction. *See* 28 U.S.C. § 1332.

## IV. DISCUSSION

### A. Defendant's Counterclaims

The parties move for summary judgment on Defendant's remaining counterclaims. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). After the movant shows "that there is an absence of evidence to support the nonmoving party's case," the non-moving party must identify specific facts that can be established by admissible evidence, which create a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

1. *Restitution/Unjust Enrichment*

Restitution is an equitable remedy that requires a party that has received benefits under an unenforceable agreement return said benefits to prevent unjust enrichment. *See Rose v. Ackerson*, 374 S.W.3d 339, 343 (Ky. 2012) ("[U]njust enrichment 'is applicable as a basis of restitution to prevent one person from keeping money or benefits [obtained under an agreement that] belong[] to another.'" (quoting *Haeberle v. St. Paul Fire & Marine Ins. Co.,* 769 S.W.2d 64, 67 (Ky. App. 1989))); *see also See Sigmon v. Appalachian Coal Props., Inc.*, 400 F. App'x 43, 50 (6th Cir. 2010) (citation omitted). To prevail on an unjust enrichment claim, the party seeking restitution must prove: "(1) [a] benefit conferred upon [another at the claimant's] expense; (2) a resulting appreciation of benefit by [the other]; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. 2009) (citation omitted).

Defendant claims that the undisputed facts show that it is entitled to recoup the principal that it loaned to Plaintiff pursuant to the doctrine of unjust enrichment. (Def.'s Mem. Supp. Mot. 1-2). Quite simply, Defendant contends that Plaintiff obtained a benefit at its expense—i.e., retention of the $30,000.00 Defendant loaned to him plus the costs associated with the loan that Plaintiff never repaid—and that Plaintiff's continued retention of said benefit is unjust. (Def.'s Mem. Supp. Mot. 1-2; Berlin Aff. ¶¶ 28-29).

Plaintiff appears to concede that Defendant has satisfied the elements of an unjust enrichment claim, but argues that Defendant's claim should nonetheless be denied for two reasons. First, Plaintiff contends that restitution is not available as a remedy to recoup benefits conferred under an *illegal* (as opposed to merely *unenforceable*) contract. (Pl.'s Reply Supp. Third Mot. Summ. J. & Resp. Def.'s Second Cross-Mot. Summ. J. 2-8, DN 100 [hereinafter Pl.'s

Reply]). Second, Plaintiff asserts that the doctrine of unclean hands bars Defendant's restitution request. (Pl.'s Mem. Supp. Mot. 9-11). The Court will address each argument separately.

### a. Availability of Restitution/Unjust Enrichment

Plaintiff contends that Defendant cannot seek restitution of the benefits it conferred under the loan agreements because those agreements are illegal. (Pl.'s Reply 2-8). The gist of Plaintiff's position is: (1) Kentucky law holds that a party to an illegal contract may not seek restitution of benefits conferred pursuant thereto; and (2) the loan agreements are illegal (as opposed to only unenforceable) because they provided for the exchange of illegal consideration: namely, the proceeds of Plaintiff's personal injury litigation. (Pl.'s Reply 2-8). Plaintiff relies on two cases in support of his position: *Cougler v. Fackler*, 510 S.W.2d 16 (Ky. 1974), and *Varner v. Kingfish Capital Partners I, LP*, No. 2016-CA-001415-MR, 2017 WL 5952867 (Ky. App. Dec. 1, 2017).

The decision in *Cougler* arises from a most unusual, and somewhat salacious, set of facts. The defendant—a known prostitute—wanted to purchase a house, so the plaintiff (one of the defendant's recurring customers) entered into an oral agreement with her under which he promised to make the down payment on the house in her name in exchange for the house's deed. *Cougler*, 510 S.W.2d at 18. When the defendant refused to confer the deed, the plaintiff brought suit seeking recoupment of the down payment, and, at trial, the defendant testified that she provided the plaintiff with sexual favors in consideration for the down payment. *Id.* The trial court ruled in favor of the plaintiff. *Id.* at 17.

On appeal, the Kentucky's highest court concluded that the defendant's entitlement to restitution turned on the question whether sexual favors constituted any part of the consideration for the bargain. *Id.* at 19. Citing to Section 355 of the Restatement (First) of Contracts, the court

reasoned that if an illegal act (i.e., sexual favors) formed part of the consideration for the agreement, then the agreement was *illegal* and the plaintiff could not seek restitution as a remedy. *Id.* at 18-19. On the other hand, the court noted that if the bargain was legal but *unenforceable* under the statute of frauds as an oral agreement involving the exchange of land, then "the remedy of restitution to prevent unjust enrichment" *would* be available *unless* the statute of frauds "prohibits [that] remedy, or the purpose of the statute [of frauds] would be nullified by granting such a remedy." *Id.* at 18 (citation omitted). Ultimately, the court remanded the case to the trial court for a determination of the basis for the bargain.

*Varner* involves an application of *Cougler* in a less scandalous context. In *Varner*, the defendant broker promised to pay the plaintiff to sell securities in Kentucky without a license. *See Varner*, 2017 WL 5952867, at *2-3 (noting that the defendant made an "illegal promise to compensate [the plaintiff] for his unlicensed sale of . . . securities."). When the brokerage refused to pay him for his efforts, the plaintiff filed an unjust enrichment claim against it. *Id.* at *1-3. The trial court found that the plaintiff's unlicensed sale of securities violated KRS 292.330(1)[3] and granted summary judgment in favor of the defendant pursuant to KRS 292.480(6), which provides:

> No person who has made or engaged in the performance of any contract in violation of any provision of this chapter or any rule or order hereunder, or who has acquired any purported right under any contract with knowledge of the facts by reason of which its making or performance was in violation, *may base any suit on the contract*.

*Id.* at *2; *see also* KRS 292.480(6) (emphasis added).

The Kentucky Court of Appeals affirmed. To support its decision that the plaintiff was not entitled to restitution (notwithstanding the uncompensated services he performed for the

---
[3] KRS 292.330(1) provides that "[i]t is unlawful for any person to transact business in this state as a broker-dealer unless the person is registered under this chapter as a broker-dealer . . . ."

7

defendant), the court relied on Comment A of Section 197 of the Restatement (Second) of Contracts:

> *In general*, if a court will not, on grounds of public policy, aid a promisee by enforcing the promise, it will not aid him by granting him restitution for performance that he has rendered in return for the unenforceable promise. Neither will it aid the promisor by allowing a claim in restitution for performance that he has rendered under the unenforceable promise. It will simply leave both parties as it finds them, even though this may result in one of them retaining a benefit that he has received as a result of the transaction.

Restatement (Second) of Contracts § 197, cmt. a. (emphasis added). The court also reasoned that, under *Cougler*, the plaintiff could not seek restitution because the statute that rendered the contract unenforceable (i.e., KRS 292.480(6)) prohibited litigation as a means to obtain a remedy and therefore implicitly bars the remedy of restitution. *Varner*, 2017 WL 5952867, at *3 (alterations in original) (emphasis in original) (quoting *Cougler*, 510 S.W.2d at 18).

While the Court observes similarities between *Cougler*, *Varner*, and the case at bar, it disagrees that *Cougler* and *Varner* serve as an absolute bar to Defendant's restitution claim and therefore rejects Plaintiff's argument. The primary distinction between this case and *Cougler* is the obviousness of the illegality of the consideration. Consider: the illegality of prostitution was such a foregone conclusion that Kentucky's highest court did not cite any authority to support it, and this Court has no doubt that the parties in *Cougler* knew that prostitution was illegal at the time the time of the purported bargain. *Cougler*, 510 S.W.2d at 18-19. On the other hand, the illegality of litigation funding agreements was *not* a foregone conclusion at the time the parties entered into the loan agreements; in fact, it is *still* somewhat of an open question under Kentucky law. (*See* Mem. Op. & Order 4-10, DN 83). This conclusion is underscored by the fact that this Court could not find a Kentucky state court decision addressing the issue and had to instead rely a federal decision of this Court "*predict*[*ing*] that the Kentucky Supreme Court would prohibit"

such agreements. (*See* Mem. Op. & Order 4-10, DN 81 (emphasis added) (citing *Incline Energy, LLC v. Stice*, No. 3:09-CV-58-H, 2009 WL 1975038 (W.D. Ky. July 6, 2009))).

Though it should go without saying, the obviousness of the illegality of the consideration is important given that this Court is being asked—as was the court in *Cougler*—to wield its "broad powers in equity to fashion a remedy out of general considerations of right and justice as applied to the relation of the parties and the circumstances of their dealings . . . ." *Bolen v. Bolen*, 169 S.W.3d 59, 65 n.14 (Ky. App. 2005) (citing *Gabbard v. Watkins*, 133 S.W.2d 54 (Ky. 1939)). Indeed, "general considerations of right and justice" support the conclusion that a party who has entered into an agreement that calls for the exchange of obviously illegal consideration should not be allowed to recoup any benefits he conferred pursuant thereto. But those same considerations protect parties—such as Defendant—who enter into illegal contracts without any actual or imputed knowledge of the invalidity of the agreements.

With respect to *Varner*, the Kentucky Court of Appeals' reliance on Comment A in Section 197 of the Restatement (Second) of Contracts is noteworthy because that provision supports this Court's inclination to balance the equities. Section 197 provides that "a party has no claim in restitution for performance that he has rendered under or in return for a promise that is unenforceable on grounds of public policy *unless denial of restitution would cause disproportionate forfeiture*." Restatement (Second) of Contracts § 197, cmt. a. (emphasis added). In this instance, allowing Plaintiff to retain the $30,000.00 Defendant loaned to him— and to avoid payment of the fees associated with said loans—results in a disproportionate forfeiture. Plaintiff receives an enormous windfall at no cost whatsoever.

In light of the foregoing, the Court concludes that neither *Cougler* nor *Varner* forecloses Defendant from obtaining restitution in this case.

### b. Unclean Hands

Kentucky courts have long recognized that "[h]e who comes into equity must come with clean hands . . . ." *Maas v. Maas' Adm'r*, 255 S.W.2d 497, 498 (Ky. 1952) (internal quotation marks omitted) (citation omitted). A party has unclean hands and is "precluded from [equitable] relief if that party 'engaged in fraudulent, illegal, or unconscionable conduct' in connection 'with the matter in litigation.'" *Mullins v. Picklesimer*, 317 S.W.3d 569, 577 (Ky. 2010) (quoting *Suter v. Mazyck*, 226 S.W.3d 837, 843 (Ky. App. 2007)). The doctrine of unclean hands, however, does not "appl[y] to all misconduct" or "operate so as to 'repel all sinners from courts of equity.'" *Id.* (citation omitted); *Suter*, 226 S.W.3d at 843 (quoting *Dunscombe v. Amfot Oil Co.*, 256 S.W. 427, 429 (Ky. 1923)). "A trial [court's] decision to invoke the equitable defense of the unclean hands doctrine rests within its sound discretion." *Mullins*, 317 S.W.3d at 577 (citation omitted).

Plaintiff argues that Defendant has engaged in two instances of inequitable conduct and is therefore precluded from raising a restitution claim. (*See* Pl.'s Mem. Supp. Mot. 10-11). Specifically, Plaintiff claims that Defendant's hands are unclean because: (1) the loan agreements violate Kentucky's prohibition on champerty; and (2) throughout the pendency (and after the resolution of) Plaintiff's declaratory judgment action, Defendant filed a number of lawsuits—including an action against Plaintiff and another against Plaintiff's attorney in the underlying personal injury action, Michael Breen ("Breen")—related to the loan agreements in a New Jersey state court. (Pl.'s Mem. Supp. Mot. 10-11).

The first instance of alleged misconduct does not bar Defendant from seeking restitution. As noted above, given the uncertainty under Kentucky law regarding the validity of loan agreement, it seems overly harsh to conclude that Defendant's violation of Kentucky's

champerty laws is determinative of unclean hands. (*See* Pl.'s Mem. Supp. Mot. 10). Likewise, none of the lawsuits that Defendant filed after Plaintiff initiated his declaratory judgment action amount to "fraudulent, illegal, or unconscionable conduct . . . ." *Suter*, 226 S.W.3d at 843. Shortly after Plaintiff filed this declaratory judgment action—and long before this Court entered judgments declaring that Kentucky law governed the agreements and that it was an appropriate forum in which to adjudicate Plaintiff's claims—Defendant initiated two lawsuits in New Jersey state court: (1) an action to compel arbitration against Plaintiff; and (2) an action for an accounting against Breen. (Pl.'s Mem. Supp. Third Mot. Summ. J. Mot. Att'ys' Fees & Sanctions Exs. 2, 8, DN 93-2, 93-8). Given that the first two loan agreements provided that disputes arising from them would be submitted to arbitration and governed by New Jersey law, Defendant's filing of the first two actions cannot be deemed unconscionable. *See Curtin v. Benson*, 222 U.S. 78, 85-86 (1911) (noting that an "honest assertion of rights" is not tantamount to unclean hands or unconscionable conduct). Further, while Defendant filed its third lawsuit *after* this Court had already held the loan agreements unenforceable, that action was filed against Breen, not against Plaintiff.[4]

In sum, the Court finds that *Cougler*, *Varner*, and the doctrine of unclean hands do not preclude Defendant from raising a claim for restitution/unjust enrichment. Given that Plaintiff does not contest that Defendant has presented undisputed facts supporting each of the three elements of an unjust enrichment claim, the Court finds that Defendant is entitled to summary judgment with respect to its unjust enrichment claim.

---

[4] Defendant's third lawsuit alleged, *inter alia*, that Breen violated certain agreements executed alongside the loan agreements. (Pl.'s Mem. Supp. Third Mot. Summ. J. Mot. Att'ys' Fees & Sanctions Ex. 6, DN 93-6).

## 2. *Promissory Estoppel*

Like restitution/unjust enrichment, promissory estoppel is an equitable rule that courts use to compel parties to perform certain of their obligations under otherwise unenforceable contracts. In Kentucky, "[p]romissory estoppel requires '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance [and it] is binding if injustice can be avoided only by enforcement of the promise.'" *White/Reach Brannon RD., LLC v. Rite Aid of Ky., Inc.*, 488 S.W.3d 631, 639 (Ky. App. 2016) (second and third alterations in original) (quoting *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009)).

Defendant claims that—given the terms of the loan agreements—Plaintiff should have reasonably expected that Defendant would rely on his promise that he would repay the principal and fees associated with the loan in deciding whether to advance the loans in the first place. (Def.'s Mem. Supp. Mot. 3). As a result, Defendant argues that Plaintiff's promise should be enforced so as to avoid injustice.[5] (Def.'s Mem. Supp. Mot. 3).

The Court agrees. Per the language of the loan agreements, Plaintiff is estopped from denying that Defendant would not have advanced loans had he not promised to pay such advancements back upon successful resolution of his personal injury case. (Compl. Ex. A, ¶ 3(a) (noting that the amount advanced under the first loan agreement "shall be paid, upon settlement, judgment or verdict of the action and receipt of proceeds therefrom"; Compl. Ex. B, ¶ 3(a) (same); Compl. Ex. C, 1-2 (same); Compl. Ex D, 1-2 (same)). Given that excusing Plaintiff from

---

[5] As with Defendant's restitution/unjust enrichment claim, Plaintiff does not contest that the undisputed facts show that Defendant is entitled to judgment as a matter of law on its promissory estoppel claim. Rather, Plaintiff argues that *Cougler*, *Varner*, and the doctrine of unclean hands preclude Defendant from raising an equitable claim for promissory estoppel. (Pl.'s Mem. Supp. Mot. 10-11). As this Court has already noted at length, however, Plaintiff's arguments fail.

paying back the borrowed money would constitute an unjust result, the Court holds that the doctrine of promissory estoppel requires Plaintiff to pay Defendant the amount Defendant loaned to him ($30,000.00) plus the fees associated therewith ($4,625.00).

### 3. *Negligent Misrepresentation*

Plaintiff also seems summary judgment on Defendant's negligent misrepresentation claim. Kentucky follows the Restatement (Second) of Torts § 552 (1977) with respect to claims for negligent misrepresentation. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 582 (Ky. 2004). Under that approach:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* at 580 (quoting Restatement (Second) of Torts § 552(1) (1977)).

Defendant seeks summary judgment on this claim on the ground that the undisputed facts show that Plaintiff misrepresented that he would pay Defendant back the amount Defendant loaned him. (Def.'s Mem. Supp. Mot. 6-7). Defendant further contends that Plaintiff made this misrepresentation in a "transaction in which he ha[d] a pecuniary interest"—i.e., the loan transactions—and that Defendant relied on this misrepresentation in the course of its business. (Def.'s Mem. Supp. Mot. 6-7).

Though the parties have primarily disputed whether a claim for negligent misrepresentation is supported by the facts of this case, the Court notes that Defendant has failed to present facts demonstrating that Plaintiff failed to exercise reasonable care when he

13

represented that he would pay back the loan.[6] Instead, Defendant relies solely on its own conclusory allegation regarding the purported misrepresentation. Defendant's failure to produce facts supporting the elements of its claim is fatal on summary judgment. *Celotex*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ."); *Smith v. Peyman*, 93 F. Supp. 3d 738, 749 (E.D. Ky. 2015) (noting that summary judgment is "warranted in state-of-mind cases . . . if the nonmoving party['s position] 'rests merely upon conclusory allegations . . . .'" (citation omitted)). On this basis, Plaintiff is entitled to summary judgment on Defendant's negligent misrepresentation claim.

    **4.**    *Conversion*

Conversion is an intentional tort that involves "the wrongful exercise of dominion and control over the property of another." *Jasper v. Blair*, 492 S.W.3d 579, 582 (Ky. App. 2016) (citation omitted). The elements of conversion are as follows:

(1)    the plaintiff had legal title to the converted property;
(2)    the plaintiff had possession of the property or the right to possess it at the time of the conversion;
(3)    the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
(4)    the defendant intended to interfere with the plaintiff's possession;
(5)    the plaintiff made some demand for the property's return which the defendant refused;
(6)    the defendant's act was the legal cause of the plaintiff's loss of the property; and
(7)    the plaintiff suffered damage by the loss of the property.

*Id.* (citations omitted).

---

[6] Rather, as Defendant points out, Plaintiff likely exercised ordinary care in representing that he would pay Defendant under the loan agreements because he "entered into the[] [loan] agreements with the guidance of Counsel." (Berlin Aff. ¶¶ 12, 16-18).

Kentucky courts have reasoned that "a conversion claim cannot be brought" alongside a breach of contract claim "where 'the property right alleged to have been converted arises entirely from the contractual rights.'" *Beacon Enter. Sols. Grp., Inc. v. MDT Labor, LLC*, No. 3:12-CV-00759-H, 2013 WL 253134, at *4 (W.D. Ky. Jan. 23, 2013) (quoting *Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005)); *see also DuraCore Pty Ltd. v. Applied Concrete Tech., Inc.*, No. 5:13-CV-184-TBR, 2016 WL 3620793, at *6 (W.D. Ky. June 28, 2016) (noting that a claimant "simply cannot bring a claim for conversion as a matter of law [when] the sole property right alleged to have been converted arises entirely from rights created by the contract at issue."). Rather, to assert a conversion claim in conjunction with a contract law claim, the claimant must show that "he sustained tort damages or a loss independent of the contract . . . ." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 854 (Ky. App. 2014).

The converted property in this case is the same property that Defendant seeks via its equitable contract claims for restitution/unjust enrichment and promissory estoppel: the $30,000.00 it loaned to Plaintiff, plus costs. Given that Defendant's conversion claim seeks the same relief as his equitable contract claims—and that he is entitled to said relief pursuant to the above analysis—he has failed to show that "he sustained tort damages or a loss independent of the contract damages" and therefore cannot prevail on a claim for conversion. *Id.* (holding that, as a matter of law, the claimant could not prevail on his conversion claim after he had recovered economic damages for his contract claim and the converted property had been returned). Plaintiff is therefore entitled to summary judgment on this claim.[7]

---

[7] The fact that this Court held the loan agreements unenforceable does not change this conclusion. Though Defendant's right to the converted property arises pursuant to equitable doctrines discussed above rather than from a claim for breach of contract, the fact remains that the equitable doctrines—i.e., restitution and promissory estoppel—serve as a legal basis for the Court to enforce certain *of the contract's provisions* even though the contract as a whole is

### 5. *Breach of the Implied Duty of Good Faith and Fair Dealing*

Defendant's final counterclaim is for breach of the implied duty of good faith and fair dealing, which requires little discussion. Though "there is an implied covenant of good faith and fair dealing," within every contract under Kentucky law, this duty only attaches in cases involving enforceable contracts. *See Farmers Bank & Tr. Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005); *see also Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 364 (Ky. App. 2007) (noting that, "in the absence of an underlying contract, no covenant of good faith and fair dealing arises." (citation omitted)). Given that this Court previously held that the loan agreements are unenforceable (*See* Mem. Op. & Order, DN 83), Defendant's claim is barred as a matter of law.[8] Plaintiff is therefore entitled to summary judgment with respect to this claim.

### B. **Plaintiff's Motion for Sanctions and Fees**

Finally, Plaintiff asks the Court to award him the attorney's fees he incurred "as a result of the vexatious suits" Defendant filed against him. (Pl.'s Mem. Supp. Mot. 14-16). He seeks said fees pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

unenforceable. *See Union Cent. Life Ins. Co. v. Glasscock*, 110 S.W.2d 681, 686 (Ky. 1937) (describing restitution as a quasi-contract principle); *Watson by & through Watson v. Jagoe Homes, Inc.*, No. 2016-CA-001897-MR, 2017 WL 6398289, at *7 (Ky. App. Dec. 15, 2017) (noting that promissory estoppel allows the court to enforce promises contained in contracts that are unenforceable for lack of consideration). As a result, Defendant's equitable claims to the converted property ultimately arise from the contract itself.

[8] The Court notes that Defendant concedes in his briefing that its claim for breach of the implied duty of good faith and fair dealing is foreclosed. (*See* Def.'s Mem. Supp. Mot. 19).

16

28 U.S.C. § 1927. The Sixth Circuit has held that this statute authorizes district courts to require a litigant to pay his adversary's attorney's fees when he "knows or reasonably should know that a claim pursued is frivolous . . . ." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). A court's decision to award such fees is discretionary. *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 698, 699 (6th Cir. 2018).

As discussed above, Defendant allegedly multiplied the litigation of Plaintiff's action by filing three lawsuits in New Jersey state court. First, Defendant filed an action to compel arbitration against Plaintiff. (Pl.'s Mem. Supp. Mot. Ex. 8). Second, Defendant initiated a lawsuit seeking an accounting from Breen. (Pl.'s Mem. Supp. Mot. Ex. 2). And third, Defendant filed suit against Breen on the ground that Breen breached contracts executed alongside the loan agreements. (Pl.'s Mem. Supp. Mot. Ex. 6, ¶¶ 1-8).

The Court finds that Defendant's alleged misconduct is not sufficiently unreasonable and vexatious to justify an award of attorney's fees in Plaintiff's favor. As previously noted, Defendant was justified in filing the first two lawsuits, as both were filed prior to the order holding that this Court was an appropriate forum in which to adjudicate Plaintiff's claims. (*See* Pl.'s Mem. Supp. Mot. Exs. 2, 8; Mem. Op. & Order, DN 31). Further, the Court finds it hard to believe that Defendant "multiplie[d] the proceedings" in Plaintiff's case by filing a lawsuit against Breen. Accordingly, the Court will not award Plaintiff attorney's fees pursuant to 28 U.S.C. § 1927.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment with Motion for Attorneys' Fees and Sanctions Pursuant to 28 U.S.C. § 1927 (DN 93) is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendant's Cross-Motion for Summary Judgment (DN 96) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff shall pay Defendant the sum of $30,000.00, which represents the principal of the loans, plus costs totaling $4,425.00.

**Greg N. Stivers, Judge**
**United States District Court**
May 25, 2018

cc: counsel of record